UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

   QUINN D. HICKEY                               Case No. 07-23041-dob
   and JILL A. HICKEY,                        Chapter 7 Proceeding
                                                              Hon. Daniel S. Opperman

                Debtors.
_____/

## OPINION REGARDING DEBTORS' MOTION TO HOLD CREDITOR NEW EQUIPMENT LEASING, INC. IN CONTEMPT FOR VIOLATION OF THE AUTOMATIC STAY

Debtors, Quinn and Jill Hickey, filed a Motion to Hold Creditor New Equipment Leasing, Inc. ("NEL") in Contempt for Violation of the Automatic Stay on June 11, 2008. NEL denies Debtors' allegations. After a preliminary hearing on Debtors' Motion, this Court held an evidentiary hearing on October 24, 2008, and continued that hearing to November 17, 2008. For the reasons stated in this Opinion, the Court holds that certain actions of NEL violated the automatic stay imposed by 11 U.S.C. § 362 and that damages are awarded in favor of the Debtors and against NEL.

### Findings of Fact

From the testimony of the witnesses and the exhibits admitted into evidence, the Court makes the following findings of fact. The Debtors owned real estate and a building located at 3120 East Holland Road, Saginaw, Michigan. A corporation known as Hickey Auto Sales & Service, Inc. ("HASS") operated a Midas Muffler franchise from this location. The sole shareholders of HASS are the Debtors. In 2005, the Debtors began operating a second Midas Muffler franchise on Bay Road, Saginaw, Michigan. A corporation known as Hickey Auto Service, Inc. ("HAS") operated the Bay Road location. Unlike the Holland Road location, HAS leased the land and building from

1

Midas Realty and likewise leased equipment to operate the Midas franchise. NEL entered into a lease agreement with HAS for some of this equipment. The Debtors guaranteed the NEL lease with HAS.

By July, 2007, the HAS operations on Bay Road were such that HAS closed and terminated the Midas franchise. NEL instituted state court proceedings against HAS seeking recovery of the leased property and a monetary judgment. The Debtors were named as Defendants in this action because of a guaranty signed by each Debtor. When NEL recovered its leased property, some of the leased property was located at the Holland Road building operated by HASS and other pieces of equipment were located at the Debtors' residence. A money judgment was subsequently entered in favor of NEL and against the Debtors and HAS in state court ("NEL Judgment").

By September, 2007, counsel for NEL determined that collection activity directed against the Debtors would be successful and that the money judgment entered in favor of NEL would be satisfied. The Kent County Circuit Court issued a Writ of Execution authorizing Chris McCardell to seize property of the Debtors and HAS.

On November 14, 2007, Mr. McCardell visited the Debtors' residence for the purpose of seizing assets to satisfy the NEL Judgment. Mr. Hickey did not want Mr. McCardell to seize any of the Debtors' property, most notably a boat owned by the Debtors. Mr. Hickey let the air out of the tires of the trailer holding the boat and began fevered negotiations with Mr. McCardell in an effort to find other means to satisfy the NEL Judgment. During this time, Mr. McCardell called for police backup and Thomas Township Officer Randy Kunm and Sergeant Gary Bredinger appeared to assist Mr. McCardell. Cooler heads prevailed, however, and Mr. Hickey indicated to Mr. McCardell that there were sufficient assets located at the Holland Road address to satisfy the NEL

Judgment. Mr. McCardell took possession of three titles to motor vehicles and water craft and then followed Mr. Hickey to the Holland Road address.

While at the Holland Road address on November 14, 2007, Mr. Hickey and Mr. McCardell discussed various means to sell the assets located at Holland Road. The testimony is clear that Mr. Hickey intended to have these assets available to satisfy the NEL Judgment, but that neither Mr. McCardell or Mr. Hickey agreed on the exact method to do so. Regardless, the Court finds that Mr. Hickey intended to let Mr. McCardell believe that the Holland Road assets were appropriate to sell in satisfaction of the NEL Judgment. Mr. McCardell and Mr. Hickey agreed on November 14, 2007, that the two of them would meet in the late morning or early afternoon of November 15, 2007, for the purpose of looking at the Holland Road assets further and arranging a method to sell these assets.

Sometime on November 15, 2007, the parties had a change of heart on how these assets should be sold. Mr. McCardell thought it necessary to take physical possession of the Holland Road building and instructed a local locksmith and auctioneer to change the locks on the Holland Road building and otherwise disable the alarm and security system installed by the Debtors. A picture taken in November, 2007, indicates that the Holland Road address had the name of HAS on a public sign. Testimony of Mr. McCardell and Mr. Hickey also was that the licenses on the wall in the Holland Road building were in the name of HASS.

On November 16, 2007, the Debtors filed their Chapter 7 Petition with this Court, fulfilling a statement made by Mr. Hickey to Mr. McCardell on November 15, 2007. On November 16, 2007, Mr. Hickey visited the Holland Road address and discovered that one door was open, allowing access to the public. Mr. Hickey called Mr. McCardell on his cell phone and informed him of the situation. Mr. McCardell in turn contacted Mike's Wrecking, a local Saginaw towing service, to

confirm that fact. Mr. McCardell at that time instructed Mike's Wrecking to weld shut one of the doors on the Holland Road building. By doing so, Mr. McCardell believed that he was securing the Holland Road building, as well as the assets inside that building.

As early as November 16, 2007, but no later than November 20, 2007, Mr. Hickey visited the Holland Road building and wrapped a tow strap around a door handle and pulled the handle off with his truck. Mr. Hickey then entered his building and pulled out the locks installed at the direction of Mr. McCardell and reinstalled the lock cylinders used by the Debtors. For all intents and purposes, therefore, the Debtors regained access to their building on Holland Road, albeit with the knowledge that NEL, through Mr. McCardell, had seized the assets contained in that building.

As to these assets, Mr. Hickey testified that the vast majority of the assets were inventory items and equipment normally found in the muffler repair and installation business, as well as general automotive repairs. Mr. Hickey also testified that he had personal tools at the Holland Road address, as well as some motor vehicles, a personal computer, and other auto parts owned by him. The state of the condition of these assets remained in place at the Holland Road building until December 23, 2007. From November 16, 2007, through December 23, 2007, NEL and the Debtors, through their respective counsel, exchanged a number of letters and telephone calls attempting to sort out the situation.

By December 23, 2007, NEL's counsel, Richard Bolhouse, felt sufficiently certain that the Holland Road building assets were owned by the corporation rather than the Debtors and, therefore, instructed Mr. McCardell to assemble the necessary personnel to remove the assets from that building. On December 23, 2007, Mr. McCardell and these individuals visited the Holland Road building and removed the lock cylinder reinstalled by Mr. Hickey. These individuals then removed

4

all of the property from the Holland Road building and then reinstalled the lock cylinder removed that day.

Counsel for the Debtors filed a motion with the Kent County Circuit Court challenging the authority of Mr. McCardell to act as a court officer for the Kent County Circuit Court. After considering this issue, Circuit Judge Sullivan issued an opinion on March 26, 2008, that Mr. McCardell did not have the necessary authority to seize the property on December 23, 2007. Judge Sullivan ordered that the property be returned to the Holland Road building, which occurred by April 15, 2008. When returned, this property had a value of $20,000.

Analysis

Section 362(a) automatically stays all proceedings against the debtor as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of –

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of this case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . .

A bankruptcy petition operates as a stay of "any proceeding to recover a claim against the debtor" and "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The purpose of the automatic stay is to give the debtor a "breathing spell from his creditors." *In re Banks*, 253 B.R. 25, 29 (Bankr. E.D. Mich. 2000). The legislative history indicates that the stay provides a debtor broad protection from his

5

creditors by stopping all collection efforts, all harassment, and all foreclosure actions. *Id*.

A party violates the automatic stay by taking any action prohibited by section 362(a) after receiving notice of a bankruptcy filing. *Id*. "Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the stay." *In re Daniels*, 206 B.R. 444, 445 (Bankr. E.D. Mich. 1997) (quoting *In re Wagner*, 74 B.R. 898, 904 (Bankr. E.D. Pa. 1987)). To show liability under section 362(h), the Debtor need only show actual notice of the bankruptcy and an act in violation of the stay. "Satisfying these requirements itself creates strict liability. There is nothing more to prove except damages." *Daniels*, 206 B.R. at 445. The automatic stay requires creditors to take affirmative steps to halt or reverse any pending suits or collection efforts begun prior to bankruptcy, including garnishment, repossession of a vehicle, and foreclosure of a mortgage or lien. *Banks*, 253 B.R. at 30. A strict reading of 11 U.S.C. § 362 only requires the Court to question whether there is a violation of the automatic stay. Motive or intent does not impact the issue of liability, but does impact the issue of damages.

An individual debtor can recover damages for willful violation of the stay under § 362(k), which provides:

> (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

In this case, much of the complained of activity occurred prior to November 16, 2007, when the Debtors filed their Chapter 7 Petition. For example, Mr. McCardell's discussions with Mr. Hickey on November 14 and November 15, 2007, occurred prior to the filing of the Chapter 7

6

Petition. Any actions taken by Mr. McCardell or NEL prior to November 16, 2007, are not subject to the automatic stay imposed by 11 U.S.C. § 362. Actions after November 16, 2007, are clearly stayed by 11 U.S.C. § 362.

Likewise, the automatic stay applies only to property owned by the Debtors, Quinn and Jill Hickey. Property owned by HASS or HAS is not subject to 11 U.S.C. § 362.

Applying these two bright line boundaries, the actions taken by Mr. McCardell on November 16, 2007, as to the Holland Road building owned by the Debtors violates 11 U.S.C. § 362. In particular, the Court finds that the welding of the door on Holland Road violates 11 U.S.C. § 362. The uncontroverted testimony of Mr. Hickey was that it cost $800 to repair and replace this door, so the Court awards damages in the amount of $800 in favor of the Debtors and against NEL. Prior to November 16, 2007, Mr. McCardell received three titles and delivered them to Mr. Bolhouse. Mr. Bolhouse held these titles and inquired of the Trustee for the Debtors' estate as to what should be done with these titles. The titles were ultimately returned to the Debtors. Under these circumstances, the Court finds that the mere holding of the titles by Mr. Bolhouse did not violate the automatic stay. Moreover, the Court determines that even if the holding of the titles did violate the automatic stay, the Debtors failed to demonstrate any damages in regard to the mere holding of the titles. For example, the Debtors did not testify that they had a person ready to buy any items subject to the titles such that the Debtors lost a potential sale. With the record before the Court, the Court awards no damages in regard to the retention by NEL of the titles.

As for the personal property of Mr. Hickey that was located in the Holland Road building, the Court notes that this property was returned by NEL in April, 2008. The Debtors did not prove any damages in regard to the personal computer and the Court, therefore, will not award monetary

7

damages for the loss of the use of this computer. Regarding the auto parts of Mr. Hickey, the Court finds that these auto parts were improperly held by NEL and that from the testimony of Mr. Hickey, the damages for this loss of use is $2,300. Likewise, Mr. Hickey testified that he needed the personal tools that were seized by NEL on December 23, 2007, in order to do various odd jobs at the Holland Road address. Mr. Hickey's uncontroverted testimony is that he would have earned $200 per week using these tools. The Court's review of the calendar for the months of December, 2007, through April, 2008, indicates that there were 16 weeks in which Mr. Hickey did not enjoy the use of these tools. Damages for these 16 weeks at the rate of $200 per week total $3,200 and are awarded in favor of the Debtors and against NEL.

The Debtors also claim damages for the control of the Holland Road building by NEL from November 15, 2007, through December 23, 2007. In part, the Debtors also claim that they lost peace of mind, as well as interference by NEL with their use of the building. Mr. Hickey testified that the use of the building is valued at $4,000 per month. The Debtors also argue that M.C.L. § 600.2918 allows for treble damages if unlawful interference with the use of a building occurs. The Debtors urge this Court to, therefore, award $4,000 per month for the approximate six months that NEL had this issue open and then to treble those damages pursuant to M.C.L. § 600.2918.

The Court declines to award these damages as requested by the Debtor. First, it is clear that Mr. Hickey reentered the building as early as November 16, 2007, and as late as November 18, 2007, and found the means to regain complete access to the entire building. The Court does find that NEL still had various signs indicating that property had been seized in the Holland Road building, but the record before the Court from Mr. Hickey's testimony does not convince the Court that the Debtors were so fearful that NEL would come back at any time so as to warrant the request for

8

damages by the Debtors.

The Debtors also did not provide any evidence that they suffered mental anguish that required consulting with any type of medical care provider. While the Court acknowledges that in the proper case, damages for such mental anguish may be appropriate, the Court concludes that in this case the proofs are simply insufficient to warrant an award of damages for mental anguish.

The Debtors next claim that the seizure of the building interfered with the sale of the building, as well as a loss of value of HAS and HASS. The Court notes that the value of the Holland Road building was less than the amount owed to the mortgage holder, Bayview Loan Servicing, LLC, and that Mr. Hickey testified that he had consulted with a realtor about selling the Holland Road building as a turn key operation, but that he did not list the Holland Road building prior to the bankruptcy filing on November 6, 2007. Again, the Court notes that the Debtors' request for damages may be appropriate under certain circumstances, but they are simply not appropriate given the proofs before the Court. Likewise, the Court concludes that the value of HASS, even assuming the Debtors' estimate of $100,000, was not adversely affected by NEL's actions. First, HASS owed anywhere from $30,000 to $40,000 to Midas for franchise fees and another approximate $40,000 to the Internal Revenue Service. The value of the property returned by NEL is $20,000. Even assuming the Debtors' most optimistic value of HASS, the Court does not see how the Debtors could prove to any certainty the damages to the value of HASS by NEL's seizure.

Finally, the Debtors requested this Court assess punitive damages against NEL. In considering this request, the Court notes that NEL certainly took aggressive action to collect its judgment as to the Debtors and HAS. A close examination of the letters sent by counsel, as well as the Bankruptcy Schedules and Statement of Financial Affairs, however, leads this Court to conclude

that Mr. Bolhouse could have reasonably concluded that the property in the Holland Road building was owned by either HAS or HASS, and not by the Debtors. The Debtors' Schedule B did not list this property. The letters sent by Debtors' counsel do not clearly state that certain property in the Holland Road building was owned by the Debtors.

As indicated earlier, the Court notes that the automatic stay applies only to the Debtors. Moreover, the Debtors' claims that NEL should have been more conservative in regard to the issues of whether the property at Holland Road was owned by HAS or HASS are really not relevant to the automatic stay. With the exception of the items that the Court has already awarded compensation, the Debtors cannot and did not prove that the personal property located at Holland Road was theirs. Instead, the Debtors wish to have this Court award damages for the loss of use of property that was owned by corporations in which the Debtors were the sole shareholders. 11 U.S.C. § 362 cannot be extended that far in this case.

In particular, the Court notes that the timing is very important. When Mr. McCardell presented himself at the Debtors' residence on November 14, 2007, it is clear from the testimony of Mr. Hickey, Mr. McCardell, and Sergeant Bredinger that Mr. Hickey did not want Mr. McCardell to take the boat owned by the Debtors. Mr. Hickey took the action of letting the air out of the trailer tires to prevent Mr. McCardell from taking this boat. Mr. Hickey also suggested to Mr. McCardell that there were assets available at the Holland Road building sufficient to pay the NEL Judgment. By making this statement, Mr. Hickey made an implicit representation that the property on Holland Road was either owned by HAS, the entity in which NEL had a judgment against, or was available as an unencumbered asset for payment of the NEL Judgment. Having set the parties on this course, Mr. Hickey cannot be later heard to complain of any confusion caused by these statements.

10

Additionally, the Court notes that a casual observer of the Holland Road building sign in November, 2007, would note that the Midas franchise was apparently operated by HAS. The Court does note that the licenses on the wall indicated that the operator was HASS, but with the record before the Court, as well as the confusion caused by Mr. Hickey and the similarity of the names, the Court declines to assess punitive damages against NEL for this confusion. Although the Court notes that a more prudent and conservative approach would have been to determine exactly which corporation owned what assets prior to taking physical possession of those assets, the Court also notes that Mr. Hickey had demonstrated by November 18, 2007, that he was ready, willing, and able to take drastic action to avoid NEL from collecting on its judgment.

Debtors have also requested attorney fees and costs in the amount of $12,375.28, which Debtors assert is in addition to their attorney fees incurred in prosecuting the instant Motion. The $12,375.28 amount represents fees and costs incurred during the time period November 26, 2007, through May 12, 2008, much of which appears to relate to the above-described Kent County Circuit Court action. The Court concludes that it will not award any attorney fees and costs that are connected with the Kent County Circuit Court action to the extent that such are related to the determination that Mr. McCardell was not an authorized court officer pursuant to applicable law. To the extent that any fees and costs are directly related to attempted enforcement by Debtors' counsel of the bankruptcy automatic stay, including those that may be related to the instant Motion, the Court will consider those fees and costs, but will allow NEL the opportunity to respond to those requested fees and costs. Counsel for Debtors shall have twenty-one (21) days to file an amended itemized bill of costs with the indicated limitation, and counsel for NEL shall have twenty-one (21) days to file a response.

11

For these reasons, the Court awards damages in the amount of $6,300.00, plus attorney fees and costs to be determined after application by Debtors' counsel. Counsel for the Debtors is directed to submit an order consistent with this Opinion.

**Signed on December 23, 2008**

                                           `/s/ Daniel S. Opperman`
                                           **Daniel S. Opperman**
                                           **United States Bankruptcy Judge**