UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

    QUINN DAVID HICKEY                          Case No. 07-23041-dob
    and JILL ANN HICKEY,                       Chapter 7 Proceeding
                                                              Hon. Daniel S. Opperman

            Debtors.
_____/

## OPINION

The Court entered an Opinion on December 23, 2008, determining that New Equipment Leasing, Inc. ("NEL") violated the automatic stay pursuant to 11 U.S.C. § 362. The Opinion of this Court also directed counsel for the Debtors, Quinn and Jill Hickey, to submit an application for attorney fees and costs and allowed NEL the opportunity to object and comment to the application. The Court has reviewed the Affidavit Supporting Bill of Costs, as well as the response of NEL to the Affidavit Supporting Bill of Costs, and renders its Opinion as follows.

Exhibit A to the Affidavit of Mr. Powers details services rendered in regard to the state court action known as the Grand Rapids Litigation. The Court has reviewed these time entries and concludes that only the November 16, 2007, entry is directly related to the violation of the automatic stay claimed by the Debtors. Accordingly, the Court will allow reimbursement in the amount of $40 for services rendered in regard to Exhibit A. The remaining services detailed in Exhibit A are related to services in connection with either non-debtor entities or issues unrelated to the violation of the automatic stay. To the extent needed, therefore, the Court sustains the objection of NEL to services and expenses outlined in Exhibit A, with the exception of the November 16, 2007, entry. The Court, therefore, allows damages in the amount of $40 in regard to Exhibit A.

Turning to Exhibit B, NEL initially objects to the hourly rate of $250 per hour. NEL points

1

to Exhibit A to indicate that Mr. Powers charged $200 per hour for his state court work, but $250 per hour for his bankruptcy services. Initially, the Court notes that Mr. Powers is a duly licensed attorney with over two decades of experience in federal and state court litigation, including bankruptcy. Analyzing the $250 per hour rate requested by Mr. Powers in Exhibit B, the Court relies upon its examination of fee applications filed with this Court from a number of attorneys, which range from the metropolitan Detroit area to the northern boundaries of this district. Attorneys with experience similar to Mr. Powers generally charge anywhere from $200 to $350 per hour, thus, the $250 per hour requested by Mr. Powers in this case is within the range of other requests. Moreover, the Court notes that the Trustee in this action, Karen E. Evangelista, has retained counsel who charges a range of $225 to $325 per hour for services.

To the extent that Mr. Powers has elected to give the Debtors a discount for state court action services, the Court leaves the parties and their attorney to such arrangements. From the Court's analysis, the $250 per hour rate charged by Mr. Powers is reasonable.

NEL's next objection is that various services rendered by Mr. Powers appear unreasonable and excessive. In reviewing Exhibit B, the Court agrees with NEL that the 19.8 hours spent researching and preparing the motion and brief initiating the stay litigation is excessive. Since bankruptcy practice does require extensive knowledge of both state and federal law, this Court has in the past rewarded that knowledge with a higher hourly rate, but with the corresponding requirement that attorneys be efficient in performing these services. As indicated by NEL, NEL required approximately 8 hours to respond to the motion brought against it. The Court believes that the 8 hour benchmark is appropriate, and, therefore, allows compensation for 8 hours at $250 per hour, but disallows the remaining 11.8 hours of compensation at $250 per hour which results in an award of $2,000, and a $2,950 deduction from the requested fees.

NEL next points to the time preparing Debtor, Quinn Hickey, for testifying in this case. In

2

this instance, there are simply too many variables beyond the control of any competent counsel to question whether the time spent in this case was unreasonable. The Court does note that Mr. Hickey testified extensively at the hearing and was obviously emotionally and psychologically engaged in this process. From the nature of this testimony, the Court concludes that Mr. Powers may have had more than the usual task of preparing a witness for expected direct and cross-examination testimony. Stated somewhat differently, this Court will not second guess the efforts of Mr. Powers to prepare Mr. Hickey and, therefore, allows the fees connected with that preparation.

NEL also argues that the time spent in preparing the Affidavit is excessive. The Court generally allows for 1 hour for preparation of fee applications such as the one before it in this case, but does note that some additional research was undoubtedly necessary given the unique nature of the state court and federal court actions in this case. Accordingly, the Court will allow 1.5 hours of the 3.0 hours requested for the preparation of the fee application and, therefore, will allow $375, and disallow $375.

Finally, the Court notes that there are time entries of November 14, November 17, and November 24, that contain time in the hundredths of an hour, which is contrary to E.D.Mich.LBR 2016-1(a)(15)(A)(iv). Accordingly, the Court reduces the request stated in Exhibit B by an additional $37.50.

Taken in total, the Court reduces the $20,862.50 by $3,362.50 and awards fees of $17,500 from Exhibit B. Adding in the $40 from Exhibit A, the total amount in question that the Court will allow is $17,540.

NEL also argues that the fee award should be consistent with the amount awarded for actual damages. NEL urges this Court to follow the case of *In re Harris*, 374 B.R. 611 (Bankr. N.D. Ohio 2007), as well as other cases as cited outside of the Sixth Circuit.

This Court believes that attorney fees should be reasonable not only on a case specific basis, but also from a larger, universal perspective. While the Court acknowledges that the arguments of NEL are well taken, a broader view than that urged by NEL dictates that the amount of fees of $17,540 should be awarded.

First, the Court notes that the damages from this motion are indeed substantial and the most awarded by this Court for a stay violation in recent memory. Second, NEL's actions in this case have already been characterized by this Court as aggressive, and that a more prudent and conservative approach would have been to determine exactly which corporation or individual owned the property in question. Faced with an admittedly aggressive creditor, corresponding aggressive and, therefore, expensive attorney response by the Debtors was appropriate and necessary. As the creditor started the chain of events and was in a position to stop the chain of events at any time, the Court in this case will not allow the creditor to later complain that actions could have been done less expensively by the Debtors.

While the Court accepts the general notion that a broader view should be taken of the fees awarded, the broadest view allowed here is to consider the message sent to creditors and debtors alike for future cases. In doing so, the Court must first start with the well accepted premise that the automatic stay is a fundamental part of the fresh start that Congress has chosen to give all debtors. The automatic stay allows debtors a breathing spell to regain their footing and begin their financial life anew. In this case, these Debtors were not allowed that opportunity until much later, all because of the actions of NEL. Most noteworthy, NEL improperly seized tools and equipment that would have allowed Mr. Hickey the opportunity to earn money and perhaps save more of his property or earn money to provide support for his family. The Court acknowledges that compensation has already been awarded for this loss, but the very nature of this holding of assets was particularly startling in this case.

4

Moreover, as stated previously in this Opinion, it is clear that Mr. Hickey was emotionally upset and perhaps traumatized by the actions of NEL. If this Court were to ever revisit this issue, the Court may very well reconsider whether emotional distress damages should have been awarded. While it is admitted that there is no significant medical evidence before this Court indicating that Mr. Hickey sought medical psychiatric treatment, that is not to say that Mr. Hickey perhaps should have more seriously considered these services. More to the point, it is clear that Mr. Powers' substantial time in preparing Mr. Hickey was undoubtedly increased because of the need to make sure that Mr. Hickey was able to testify competently.

Finally, this Court is charged with the duty of enforcing automatic stays and the violations of automatic stays when violations occur. To turn a blind eye to violations of the automatic stay does a disservice to debtors, debtors' counsel and creditors. Stated differently, if this Court were to not award appropriate fees and, therefore, condone the activities of NEL in this case, then other creditors who do indeed play by the rules are put at a competitive disadvantage and also left with the precedent of violating 11 U.S.C. § 362 and then seeing if they are caught.

Finally, the Court notes that the request for attorney fees was $29,752.19. The Court in this case has substantially reduced the amount awarded in comparison to the original amount requested. While the Court acknowledges that a cynic may think that the Debtor simply requested an outlandish amount of fees and then had that amount reduced by this Court, the Court does note that many of the fees requested are in relation to actions taken by NEL that have been determined by a state court judge to be improper. The remainder were connected to the violations of 11 U.S.C. § 362. This Court acknowledges that there is a time when attorney fees caused by the actions of another may not be awarded, but the Court concludes that in this case, with the reductions indicated in this Opinion, the amounts of $17,540 in attorney fees and $864.41 in expenses are proper in this case.

In conclusion, the Court awards fees of $17,540 and expenses of $864.41 in favor of the Debtors, Quinn and Jill Hickey, and against the creditor, New Equipment Leasing, Inc.

Counsel for the Debtors is directed to draft an order consistent with this Opinion.

**Signed on March 02, 2009**

                                                                              **/s/ Daniel S. Opperman**
                                                                               **Daniel S. Opperman**
                                                                               **United States Bankruptcy Judge**